UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MELISSA HOLZ,

        Plaintiff,

   v.                                      Case No. 15-CV-769

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER

This is an action for review of the final decision of the Commissioner of Social Security denying plaintiff's application for Social Security Disability Insurance. Plaintiff, Melissa Holz, challenges the Administrative Law Judge's (ALJ's) decision denying her benefits. For the reasons given below, the decision of the Commissioner will be reversed and remanded for further proceedings.

## BACKGROUND

Holz filed an application for Social Security Disability Insurance on April 7, 2011, alleging disability due to multiple sclerosis (MS) and fibromyalgia. She was 41 years of age at the time. Holz was diagnosed with MS in 2001. R. 432. The record indicates that, in 2010, even though her MS was "stable without any significant recent flare-ups," Holz received treatment for memory loss and fatigue attributed to the MS. R. 798. In 2010, Holz was diagnosed with fibromyalgia. R. 310. She also suffered from depression and anxiety for many years. R. 311, 715, 717.

The Social Security Administration (SSA) denied Holz's application on August 18, 2011. R. 111. After her application and request for reconsideration were denied, Holz requested an administrative hearing. R. 128. ALJ Patrick Morrison held a hearing on November 5, 2013. Both Holz and a vocational expert (VE) testified at the hearing. R. 36–83.

The ALJ found Holz's severe impairments included relapsing and remitting MS, fibromyalgia, obesity, degenerative disc disease of the lumbar spine, major depression, and anxiety. R. 92. At step three, the ALJ determined that Holz's impairments did not meet or medically equal any listed impairments under 20 C.F.R. § 404, Subpart P, Appendix 1. R. 93. The ALJ found that the degenerative disc disease of the lumbar spine did not meet the requirements of section 1.04 because Holz was able to ambulate effectively. *Id.* The ALJ also concluded the MS did not meet the requirements of section 11.09 because it did not result in a significant and persistent disorganization of motor functioning in two extremities and did not lead to visual or mental impairment. *Id.* The ALJ found that Holz had moderate difficulties in social functioning and concentration, persistence, or pace but found that Holz's mental impairments were not so severe as to meet or medically equal the criteria of listings in 12.04 and 12.06. *Id.* The ALJ determined Holz had the following residual functional capacity (RFC):

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except she is limited to simple, routine, repetitive tasks requiring no more than simple work-related decisions with few changes in the routine work setting and no more than occasional interaction with supervisors, coworkers, and the general public.

R. 94. With these limitations, the ALJ found that Holz was unable to perform past relevant work as an inventory analyst, inventory data entry, procurement clerk, and production planner. R. 99.

However, the ALJ found that given Holz's age, education, work experience, and RFC, there were a significant number of jobs in the national economy she could perform. *Id.* Based on these findings, the ALJ concluded Holz was not disabled within the meaning of the Social Security Act. R. 100. The ALJ's decision became the final decision of the Commissioner when the Appeals Counsel denied Holz's request for review on May 5, 2015. R. 1. Thereafter, Holz commenced this action for judicial review.

**LEGAL STANDARD**

On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind could accept as adequate to support a conclusion.'" *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the Agency's own rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636,

3

638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

**A. Holz's Credibility**

Holz argues that the ALJ erred in relying upon her ability to perform activities of daily living when he concluded that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not "entirely credible." R. 96. An ALJ is in a special position to make credibility determinations because he can see, hear, and assess witnesses. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). Therefore, his credibility determinations are given special deference and will only be overturned if they are "patently wrong." *Id.* In evaluating a claimant's credibility, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1529(c) and articulate specific reasons for his finding. *Golembiewski v. Barnhardt*, 322 F.3d 912, 915 (7th Cir. 2003). Nevertheless, the ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)).

The ALJ noted Holz completed household chores such as cooking, housekeeping, laundry, mowing the lawn, and grocery shopping and acknowledged Holz hired help to clean the bathroom, sweep, and mop. R. 95, 97. The ALJ stated Holz drove a car and left her house daily. R. 95. Holz attended church, boated in the summer, visited with friends, shopped, bowled every other weekend, and attended her children's sporting events four times a week. R. 95, 97. She exercised at the

4

YMCA, specifically swimming, and attending yoga twice a week. R. 97. She spent three hours a day using her computer and smart phone. *Id.* The ALJ concluded that "her activities of daily living suggest that she should still be able to work." *Id.*

While an ALJ should consider a claimant's activities of daily living when evaluating credibility, it must "be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). An individual's "ability to perform daily activities, especially if they can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Id.* Even though the ALJ is not required to completely rule out the possibility that Holz is disabled before denying her claim, more analysis is required than what was provided here.

The ALJ failed to explain how Holz's ability to engage in these activities translates into her being able to work in a full time job, even with the limitations set forth in the ALJ's RFC assessment. Holz argues that the ALJ failed to consider that while she goes grocery shopping, she has difficulty shopping by herself because she loses her list, her keys, her phone, and her car. R. 59, 484. She can cook but often forgets steps in recipes. R. 52, 247. Likewise, although Holz can help around the house, she takes frequent breaks before finishing the task and her husband and children complete more of the household chores. R. 58, 720. Finally, Holz argues that the ALJ failed to consider that even though Holz bowls and visits with friends, she must "pick and choose" what activity she will accomplish during the day, leaves the remaining activities for the next day, and takes a nap every day around 2:00 or 3:00 p.m. R. 66, 69. The ALJ did not inquire as to what Holz actually does, how often, and how long it takes her to complete the activities. For example, there was no inquiry as to the manner, distance and duration of the swimming she engaged in as part of her exercise routine.

5

Thus, while the ALJ emphasized Holz's ability to complete certain activities of daily living, without any discussion as to the intensity level with which she performed the activities or the amount of time she spent doing them, the ALJ's conclusion lacks logical support. Holz may have been able to complete household chores, exercise at the YMCA, or go bowling and still not be able to perform sedentary work. The ALJ failed to discuss or explain why the fact that Holz could perform the stated daily activities in a limited manner undermines her credibility insofar as her symptoms prevent her from working full time. This is not to say that Holz is disabled, only that the ALJ failed to create a logical bridge between the evidence and his conclusion. This error necessitates remand.

In March 2016, the Social Security Administration released SSR 16–3p; "Titles II and XVI: Evaluation of Symptoms in Disability Claims" which supersedes SSR 96–7p. The new ruling clarifies that ALJs should no longer use the term "credibility" to evaluate the intensity and persistence of a claimant's symptoms. This clarification emphasizes that "subjective symptom evaluation is not an examination of character." SSR 16–3p. The Seventh Circuit has recognized that ALJs "will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, No. 15-3883, 2016 WL 3997246,*1 (7th Cir. July 26, 2016). The SSA should reconsider Holz's application for disability benefits consistent with the new ruling.

**B. Assessment of Medical Evidence**

Holz's primary argument concerning the medical opinions is that the ALJ failed to give controlling weight to the opinions of Dr. Lisa Kokontis and Dr. Kay Theyrl, Holz's treating physicians. Under the "treating source rule," a treating source's opinion is entitled to "controlling weight" if it is adequately supported by objective medical evidence and is not inconsistent with other

6

substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). If the ALJ discounts a treating physician's opinion, the ALJ must offer "good reasons" for doing so. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). The ALJ must then consider the checklist of factors set forth in 20 C.F.R. § 404.1527(c) to determine what weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Yet, "there is a notable distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06–03p.

Here, the ALJ gave little weight to Dr. Kokontis' opinion that Holz's MS causes disabling fatigue to the extent that it would prevent her from working full time at even a sedentary job. R. 1067. The ALJ offered several reasons for giving the opinion "little weight." First, the ALJ noted her opinion was not well-supported by the objective medical evidence. However, the ALJ erred in not indicating what medical evidence contradicted Dr. Kokontis' opinion. *See Clifford*, 227 F.3d at 870 (finding that the ALJ erred in not citing any medical report or opinion that contradicted the treating physician's opinion). The ALJ also noted the opinion was inconsistent with substantial other evidence in the record including Holz's description of her daily activities. In support of this contention, the ALJ stated, "The claimant spends about three hours a day using her computer and smart phone and is very active socially, spending time with friends, bowling in a league, attending church, swimming and doing yoga." R. 97. The ALJ did not explain why Holz's activities are inconsistent with Dr. Kokontis' opinion. His failure to provide an explanation constitutes error. *Clifford*, 227 F.3d at 870. On remand, the ALJ should cite to any medical opinion that contradicts Dr. Kokontis' opinion and explain how Holz's daily activities are inconsistent with the opinion.

The ALJ also gave little weight to Dr. Theyerl's physical capacities evaluation because the opinion was inconsistent with Holz's description of her daily activities. The ALJ indicated Holz is able to maintain her home and care for her children independently and is very active by spending about three hours a day using her computer and smart phone, cooking family meals, performing household chores, spending time with friends, bowling, swimming, taking yoga classes, and attending church. R. 98. Again, the ALJ did not describe how these activities are inconsistent with Dr. Theyerl's opinion and this failure constitutes error. *Clifford*, 227 F.3d at 870. On remand, the ALJ should explain how Holz's daily activities are inconsistent with Dr. Theyerl's opinions.

Holz further argues that the ALJ improperly weighed the opinion of Margaret McEwen, a nurse practicioner. The ALJ gave little weight to Ms. McEwen's opinion because her findings were contrary to substantial other evidence in the record including Holz's description of her daily activities. R. 98. The regulations separate medical evidence into two categories: "acceptable medical sources" and "other sources." Acceptable medical sources are limited to licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). "Other sources" include medical sources, such as nurse practitioners, social workers, and therapists, as well as non-medical sources, such as educational personnel and relatives. 20 C.F.R. § 404.1513(d). The distinction between "acceptable medical sources" and medical sources that are considered "other sources" is important because only "acceptable medical sources" can give medical opinions and be considered treating sources. 20 C.F.R. § 404.1527(a)(2); SSR 06–03p.

As previously stated, a nurse practitioner is categorized as an "other medical source." 20 C.F.R. § 404.1513(d); SSR 06–03p. In deciding how much weight to give "other medical sources,"

8

an ALJ can apply the same kinds of factors that are used to evaluate acceptable medical sources. SSR 06–03p. SSR 06–03p explains that "the adjudicator generally should explain the weight given to opinions for these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* Although Ms. McEwen is not an "acceptable medical source," the ALJ must describe how Holz's daily activities are inconsistent with Ms. McEwen's opinion. The ALJ's failure to do so constitutes error. On remand, the ALJ should explain how Holz's daily activities are inconsistent with Ms. McEwen's opinion.

Finally, Holz argues that the ALJ committed error by not mentioning the opinion of Mary Lenhard, Holz's therapist, in his decision. Pl.'s Br. 20–21. Ms. Lenhard completed a Mental Residual Functional Capacity Assessment (MRFCA) on April 2, 2012. R. 780–82. Ms. Lenhard's MRFCA was substantially similar to Ms. McEwen's assessment completed on April 25, 2012. Both concluded Holz was moderately limited in her ability to carry out detailed instructions and travel in unfamiliar places or use public transportation. They also found Holz markedly limited in her ability to remember locations and work-like procedures; understand and remember detailed instructions; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. R. 780–82, 822–24. However, Ms. Lenhard determined Holz was markedly limited in her ability to maintain attention and concentration for extended periods and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, while Ms. McEwen found that Holz was only moderately limited in these areas. *Id.*

9

The ALJ only made a cursory reference to Ms. McEwen's assessment and did not discuss Ms. Lenhard's. Absent some explanation as to why the ALJ did not use Ms. Lenhard's assessment, the case must be remanded. The regulations require that the ALJ evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). While Ms. Lenhard is not an "acceptable medical source" under the regulations, opinions from these medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06–03p. The ALJ failed to make clear in his decision whether he considered Ms. Lenhard's opinion. He mentioned every medical source except Ms. Lenhard. On remand, the ALJ should consider Ms. Lenhard's findings.

**C. RFC and Hypothetical Question**

Holz argues that the ALJ erred by failing to incorporate all of Holz's limitations in the RFC assessment and the hypothetical question posed to the VE. Pl.'s Br. 21. She asserts that the ALJ did not explain her moderate limitations in concentration, persistence, and pace (CPP) to the VE, did not discuss her memory impairment, and did not mention her use of a cane. *Id.* at 21–22.

The ALJ's RFC assessment and the hypothetical question to the VE "must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2015). The ALJ is responsible for assessing the claimant's RFC at the hearing level. 20 C.F.R. § 404.1546(c). A claimant's RFC specifies the most the claimant can do despite the limitations caused by her physical and mental impairments. 20 C.F.R. § 404.1545(a)(1). The ALJ assesses a claimant's RFC "based on all the relevant evidence" in the case record, including severe and non-severe impairments as well as medical and non-medical evidence. 20 C.F.R § 404.1545(e).

The hypothetical question to the VE must incorporate the limitations assessed in the RFC and "any deficiencies the claimant may have in concentration, persistence, or pace." *Yurt*, 758 F.3d at 857 (citing *O'Connor–Spinner*, 627 F.3d 614, 619 (7th Cir. 2010); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)). Although the ALJ is not required to use the precise words "concentration, persistence, and pace," the court "will not assume the VE is appraised of such limitations unless he or she has independently reviewed the medical record." *Varga v. Colvin*, 794 F.3d 809, 813–14 (7th Cir. 2015) (citing *Yurt*, 758 F.3d at 857).

The ALJ concluded at steps two and three that Holz had moderate difficulties with CPP. R. 92–93. The ALJ afforded the report of the state consultant, Dr. Joan Kojis, significant weight. R. 98. Dr. Kojis found that Holz was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; and respond appropriately to changes in the work setting. R. 760–61. The ALJ failed to discuss all of these limitations and explain why they were not all included in the RFC or the hypothetical question posed to the VE. The ALJ limited Holz to "simple, routine, repetitive tasks requiring no more than simple work-related decisions with few changes in the routine work setting." R. 94. The ALJ also limited Holz to "no more than occasional interaction with supervisors, coworkers, and the general public." *Id.*

The RFC and hypothetical question do not account for all of Holz's moderate limitations. The Seventh Circuit has remanded cases when the RFC and hypothetical are insufficient. *Yurt*, 758

11

F.3d at 858–59 ("[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."). Here, the ALJ does not account for the moderate difficulties Dr. Kojis concluded Holz would have in carrying out detailed instructions; completing a normal workday and workweek without interruptions from psychologically based symptoms; or performing at a consistent pace without an unreasonable number and length of rest periods. On remand, the ALJ should either include these limitations in the RFC and hypothetical question or explain why they are rejected.

While Holz asserts that the ALJ failed to create limitations regarding her memory, this argument overlaps with the CPP issue. It appears that Holz's deficiencies in concentration, like her inability to carry out detailed instructions, are connected to her issues with memory. R. 627, 762. On remand, the ALJ should be mindful to articulate whether a limitation is directed solely at Holz's CPP, memory, or both.

Holz also argues the ALJ failed to mention in the hypothetical that Holz used a cane. The ALJ's hypothetical question is required only to include limitations that are "supported by the medical evidence in the record." *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (quoting *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987)). Nothing in the record indicates that Holz was required to use a cane. In Holz's Function Report, she did not state that she used a cane. R. 253. On December 27, 2012, her doctor noted she brought a standard cane to her appointment. R. 954. The use of a cane is mentioned no where else in the record. In short, the ALJ was not required to list the use of a cane as a limitation in his posed hypothetical.

12

## CONCLUSION

For the above reasons, the decision of the Commissioner is reversed, and the case is remanded to the Commissioner. The clerk will enter judgment accordingly.

Dated this  19th  day of September, 2016.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court